UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. HAMBRICK,

       Petitioner,

v.

BLAINE LAFLER,

       Respondent.

_____/

CASE NO. 2:07-CV-13703
JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION | 1 |
| II. | REPORT | 1 |
| | A. *Procedural History* | 2 |
| | B. *Factual Background Underlying Petitioner's Conviction* | 5 |
| | C. *Standard of Review* | 7 |
| | D. *Ineffective Assistance of Counsel (Claim I)* | 9 |
| |    1. *Clearly Established Law* | 10 |
| |    2. *Analysis* | 11 |
| |       a. Failure to Move for In Camera Hearing | 11 |
| |       b. Failure to Interview and Call Witnesses, File Motions, and Effectively Defend | 13 |
| |       c. Failure to Object to Scoring of Offense Variable 12 | 14 |
| | E. *Trial Court's Pre-Plea Rulings & Voluntariness of Plea (Claim II)* | 15 |
| |    1. *Trial Court's Evidentiary Rulings* | 15 |
| |    2. *Voluntariness of Plea* | 16 |
| |       a. Clearly Established Law | 16 |
| |       b. Analysis | 17 |
| | F. *Sentencing (Claim II & III)* | 20 |
| |    1. *Guideline Scoring* | 20 |
| |    2. *Blakely* | 21 |
| | G. *Newly Discovered Evidence/Actual Innocence (Claim IV)* | 25 |
| | H. *Conclusion* | 28 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | 28 |

\*　　\*　　\*　　\*　　\*

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus.

II.     <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Michael A. Hambrick is a state prisoner, currently confined at the Mid-

Michigan Correctional Facility in St. Louis, Michigan.

2.     On June 29, 2004, petitioner was convicted of second degree criminal sexual conduct,

MICH. COMP. LAWS § 750.520c(1)(a), pursuant to his plea of *nolo contendere* in the Kent County

Circuit Court.  On September 1, 2004, he was sentenced to a term of 5-15 years' imprisonment.

3.     Petitioner initially declined appointed counsel, and his subsequent motion for

appointment of appellate counsel was denied by the trial court.  Petitioner thereafter filed an

application for leave to appeal in the Michigan Court of Appeals raising the following claims:

I.     WAS DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED
TO PRESENT A FULL DEFENCE [sic], WHICH DEFENDANT IS
GUARANTEED UNDER DUE PROCESS OF LAW?

II.     WAS DEFENDANT DENIED HIS CONSTITUTIONAL RIGHTS UNDER
ART 1, 13 TO DEFEND IN PERSON.  ALSO WHERE TRIAL COURT
REFUSED TO RULE ON ALL MOTIONS IN THE PRESEN[CE] OF
DEFENDANT?

III.     WAS THE NO CONTEST PLEA AGAINST THE GREAT WEIGHT OF
EVIDENCE, BECAUSE DEFENDANT'S ATTORNEY "SAID" THAT
THE JUDGE DENIED ALL THESE MOTIONS.  WAS THIS AN ABUSE
OF DISCRETION?

IV.     WAS DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED
TO PROVIDE THE JUDGE WITH MOTIONS UNTIL THE DAY OF
TRIAL?

V.     WAS DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED
TO OBJECT OR BRING FORTH THAT P.S.I. INVESTIGATOR HEATH
WHITE TRIED TO GET DEFENDANT TO SIGN A REGISTRY FORM
THAT SAID DEFENDANT ADMITS THAT VAGINAL, ANAL, AND
ORAL HAD OCCURRED ON SEVERAL OCCASIONS, AFTER

2

DEFENDANT HAD ACCEPTED A PLEA TO A CSC SECOND DEGREE?

VI.     DEFENDANT SHOULD BE RESENTENCED BECAUSE THE CIRCUIT
        JUDGE ERRED IN CALCULATION OF OFFENSE VARIABLE OV#12
        FOR 50 POINTS, OF PENETRATION. THE TRIAL COURT'S SCORING
        OF OFFENCE VARIABLE OV#12 WAS NOT SUPPORTED BY THE
        RECORD, BECAUSE THE DEFENDANT'S MINIMUM SENTENCE OF
        FIVE YEARS WHICH EXCEEDS THE SENTENCING GUIDELINES
        AND THEY SENTENCED DEFENDANT UNDER TRUTH IN
        SENTENCING, AND THEY USED THE 1997 GUIDELINES? THIS WAS
        ALSO AN ABUSE OF DISCRETION WHERE THE JUDGE FAILED TO
        GIVE ADEQUATE REASONS FOR THE DEPARTURE.

VII.    DEFENDANT WAS DEPRIVED OF HIS DUE PROCESS RIGHT TO A
        FAIR COURT PROCEEDING BY THE CUMULATIVE EFFECTS OF
        COURT ERRORS.

Petitioner thereafter filed a supplemental brief, raising three claims:

I.      WAS DEFENDANT-APPELLANT MICHAEL HAMBRICK DENIED HIS
        CONSTITUTIONAL RIGHT TO TRIAL BY JURY; U.S. CONST. ART.1,
        20; WHERE THE TRIAL COURT COMMITTED CLEAR ERROR, AND
        ABUSED ITS DISCRETION WHERE ALL WITNESSES FOR DEFENSE
        WAS DENIED, AND INTRODUCTION OF CHILD PROTECTIVE
        SERVICES COMPLAINT/REPORT OF PRIOR FALSE ALLEGATIONS
        OF CRIMINAL SEXUAL CONDUCT WAS DENIED BY THE TRIAL
        COURT, FORCING THIS DEFENDANT-APPELLANT TO TAKE A
        PLEA.

II.     WAS DEFENDANT-APPELLANT MICHAEL HAMBRICK DENIED
        EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHERE COUNSEL
        FAILED TO FILE AN INTERLOCUTORY APPEAL TO THIS COURT,
        TO APPEAL [THE] TRIAL COURT'S RULING DENYING
        DEFENDANT'S WITNESSES AND THE ADMISSION OF CHILD
        PROTECTIVE SERVICES COMPLAINT/REPORT, THAT WENT
        DIRECTLY TO THE COMPLAINANT'S CREDIBILITY OF PRIOR
        FALSE ALLEGATIONS OF CRIMINAL SEXUAL CONDUCT, THAT
        RESULTED IN COUNSEL FORCING A PLEA ON DEFENDANT-
        APPELLANT.

III.    WAS DEFENDANT-APPELLANT MICHAEL HAMBRICK DENIED
        DUE PROCESS OF LAW, WHERE THE JUDGEMENT [sic] OF
        SENTENCE SHOWS THAT DEFENDANT-APPELLANT PLED GUILTY,
        WHEN IN FACT HE ENTERED A (INVOLUNTARY PLEA) OF NOLO

CONTENDERE.

The court of appeals granted petitioner's motion to file a supplemental brief, and denied his application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. Hambrick*, No. 264819 (Mich. Ct. App. Feb. 10. 2006).

4.      Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court, raising the following claims:

I.      DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO FILE PRE-TRIAL MOTION FOR AN IN-CAMERA REVIEW, FAILED TO TIMELY INTERVIEW AND CALL WITNESSES IN DEFENDANT'S BEHALF, FAILED TO FILE MOTIONS IN A TIMELY MANNER, FAILED TO EFFECTIVELY DEFEND AGAINST THE CHARGES, FAILED TO ADEQUATELY OBJECT TO, AND PRESERVE FOR APPELLATE REVIEW, THE TRIAL COURT'S ASSESSMENT OF AN ADDITIONAL 50 POINTS WHICH WAS OUTSIDE THE PLEA AGREEMENT, IN VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTIONS.

II.     THE TRIAL COURT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS, RIGHT TO CONFRONTATION AND RIGHT TO CROSS-EXAMINATION UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE, INTER ALIA, UNITED STATES CONSTITUTION WHEN THE TRIAL COURT ABUSED ITS DISCRETION WHERE IT FAILED TO ALLOW THE DEFENDANT TO ATTEND THE IN-CAMERA HEARING, OR ALTERNATIVELY FAILED TO HOLD SUCH A HEARING, ABUSED ITS DISCRETION WHERE IT ALLEGEDLY DENIED ALL OF DEFENDANT'S C.P.S. RECORDS (PAST HISTORY OF FALSE ACCUSATIONS), ABUSED ITS DISCRETION WHERE IT DENIED ALL OF DEFENDANT'S PROPOSED WITNESSES DEFENDANT INTENDED TO CALL IN SUPPORT OF HIS DEFENSE, ABUSED ITS DISCRETION WHERE IT ASSESSED AN ADDITIONAL 50 POINTS DURING THE PLEA AGREEMENT WHERE DEFENDANT DID NOT AND COULD NOT HAVE REASONABLY ANTICIPATED HE WOULD BE ASSESSED SUCH, THUS, DID NOT KNOWINGLY AND INTELLIGENTLY ENTER INTO A PLEA OF GUILT SINCE THE ADDITIONAL 50 POINTS WAS NOT PART OF,

4

AND WITHIN THE SCOPE OF THE PLEA AGREEMENT ARTICULATED AND ACCEPTED ON THE RECORD, THUS INFRINGED UPON AND VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

III.    A DEFENDANT IS ENTITLED TO BE RESENTENCED IN ACCORDANCE WITH THE FACTS AND CIRCUMSTANCES OF THE CHARGED OFFENSE WHICH HE ENTERED A PLEA OF GUILT, AND ONLY WHERE THE EVIDENCE IN THE CASE SUPPORT[S] SUCH A CHARGE FOR WHICH DEFENDANT HAS BEEN SENTENCED FOR.

IV.    BASED ON THE CIRCUMSTANCES IN WHAT PROMPTE[D] DEFENDANT TO ENTER A PLEA OF GUILT, AND BASED ON THE FACT DEFENDANT NOW PRESENTS BEFORE THIS COURT NEWLY DISCOVERED EVIDENCE IN THE FORM OF A PATTERN OF PAST, PRESENT AND FUTURE FALSE ALLEGATIONS MADE BY THE COMPLAINANT, HEATHER RECTOR, DEFENDANT HAMBRICK SHOULD BE PERMITTED TO AN EVIDENTIARY HEARING TO SEEK THE TRUTH AND DETERMINE THE VERACITY OF THE DEFENDANT'S DOCUMENTARY EVIDENCE IN DETERMINING WHETHER TO ALLOW DEFENDANT TO WITHDRAW HIS PLEA OF GUILT TO PREVENT POTENTIAL AND FACIALLY EVIDENCE MISCARRIAGE OF JUSTICE IN REGARD TO DEFENDANT'S CLAIM OF ACTUAL INNOCENCE DESPITE HIS ENTRY OF A NOLO CONTENDERE PLEA OF GUILT.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Hambrick*, 477 Mich. 866, 721 N.W.2d 186 (2006).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 4, 2007. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the Michigan Supreme Court.

6.    Respondent filed his answer on December 4, 2007. He contends that petitioner's claims are without merit or not cognizable on habeas review.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's plea-based conviction arises from his sexual assault of a minor victim. On the

5

date set for trial, petitioner pleaded no contest to Count III of the information, charging second degree criminal sexual conduct, in exchange for the prosecutor's agreement to dismiss Counts I and II, charging first degree criminal sexual conduct. Prior to the taking of his plea, defense counsel indicated for the record that she and the prosecutor had met with the judge in chambers to review *in camera* Child Protective Services reports concerning the victim and discuss other witnesses the defense intended to call, with respect to which the prosecutor had filed a motion in *limine*. Although the trial court did not make a definitive ruling, it did indicate to counsel that the evidence likely would be ruled inadmissible under Rule 404(b). The trial judge confirmed defense counsel's understanding of the *in camera* discussion. *See* Plea Tr., at 3-4.

The court then swore petitioner, and advised him that the charge to which he was pleading no contest was second degree criminal sexual conduct, and that the charge carried a maximum of 15 years' imprisonment. Petitioner indicated that he understood these facts. *See id*. at 4-5. The court then advised petitioner of the rights he would be waiving by pleading no contest, and petitioner indicated that he understood these rights and that he was waiving them by pleading no contest. *See id*. at 5-6. Petitioner also indicated that he understood that, by pleading no contest, he would be giving up any claim that the plea was the result of any undisclosed threats or promises. *See id*. at 6. The prosecutor described the agreement between the parties–petitioner's no contest plea to the CSC-II charge in Count III of the Information in exchange for dismissal of the two CSC-I charges in Counts I and II of the Information–and defense counsel confirmed that this was the agreement. *See id*. at 6-7. The court then engaged in the following colloquy to establish the voluntariness of petitioner's plea:

> THE COURT:      Mr. Hambrick, has the complete plea agreement been correctly stated?

| THE DEFENDANT: | Yes, it has, your Honor. |
|---|---|
| THE COURT: | Has anybody promised you anything in addition to that? |
| THE DEFENDANT: | No. |
| THE COURT: | What is your plea? |
| THE DEFENDANT: | No contest at this time, your Honor. |
| THE COURT: | Has anybody threatened you in any way to cause you to plead guilty? |
| THE DEFENDANT: | No, your Honor, this is my choice. |
| THE COURT: | All right.  That was my next question.  Is it your own choice to plead? |
| THE DEFENDANT: | Yes, your Honor, it is. |

*Id*. at 7.  The court then used the police interview of the victim to establish the factual basis of the plea, namely, that the victim stated that the petitioner would rub "his private parts against her private parts," and that the victim was under 13 years old at the time.  *See id*. at 8.  After confirming with the prosecutor and defense counsel that they were aware of no other promises, threats, or inducements other than what was stated on the record, *see id*. at 8-9, the court accepted petitioner's no contest plea.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination

7

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

8

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529

U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.

Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D.

Mich. 2002) (Tarnow, J.).

D.    *Ineffective Assistance of Counsel (Claim I)*

Petitioner first contends that his counsel rendered constitutionally ineffective assistance prior

the entry of his plea by failing to (1) failing to file a pre-trial motion for an *in camera* review; (2)

timely interview and call witnesses on his behalf; (3) file motions in a timely manner; (4) effectively

defend against the charges; and (5) adequately object to and preserve for appellate review the trial

court's assessment of 50 points under Offense Variable 12 of the sentencing guidelines for criminal

sexual penetration.  The Court should conclude that petitioner is not entitled to habeas relief on these

claims.

9

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy

the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him.  As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

  2. *Analysis*

    *a. Failure to Move for In Camera Hearing*

Petitioner first contends that counsel was ineffective for failing to move for an *in camera*

hearing to review Child Protective Services reports concerning the victim, which petitioner contends would have shown that the victim had made prior false allegations of sexual misconduct. The record makes clear, however, that such a hearing was held. Defense counsel indicated on the record, and the trial court confirmed, that prior to the plea defense counsel, the prosecutor, and the judge reviewed the reports *in camera* and discussed petitioner's proposed witnesses. The trial judge indicated that this evidence would likely be inadmissible under Michigan Rule of Evidence 404(b). Because an *in camera* review was held, petitioner cannot show that counsel was ineffective for failing to request such a hearing.

To the extent petitioner contends that counsel was ineffective for failing to secure petitioner's presence at the *in camera* review, his claim is without merit. "A criminal defendant has a constitutional right to be 'present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" *United States v. Riddle*, 249 F.3d 529, 534 (6th Cir. 2001) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)); *see also*, *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). This right is derived from the Due Process Clause of the Fifth and Fourteenth Amendments, as well as from the Sixth Amendment's Confrontation Clause. *See United States v. Shepherd*, 284 F.3d 965, 968 n.1 (8th Cir. 2002). A defendant's presence is required only at "critical stages" of the proceedings–that is, only "to the extent that a fair and just hearing would be thwarted by [the defendant's] absence." *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934); *see also*, *United States v. Gagnon*, 470 U.S. 522, 526 (1985).

"[A] defendant is not entitled to be personally present at every proceeding in the case." *United States v. Mouzin*, 785 F.2d 682, 704 (9th Cir. 1986). Rather, in reviewing claims alleging a denial of the right to be present, "courts assume that the defendant's attorney will represent the

12

defendant's interests in noncritical proceedings." *Id.* Here, petitioner had no right to be present at the in chambers conference concerning the admissibility of petitioner's evidence. The conference addressed only pre-trial questions of law, and a defendant generally has no personal right to be present at in chambers or sidebar conferences addressing such questions. *See Tafoya v. Tansy*, 9 Fed. Appx. 862, 872 (10th Cir. 2001); *United States v. McCoy*, 8 F.3d 495, 496-97 (7th Cir. 1993); *United States v. Jorgenson*, 451 F.2d 516, 521 (10th Cir. 1971); *cf. Stincer*, 482 U.S. at 745-47 (no personal right to be present at pretrial hearing to determine competence of child witnesses where hearing addressed solely the competence (*i.e.*, admissibility) question and defense counsel was present). The pre-trial conference was not a critical stage requiring petitioner's presence because petitioner "could have done nothing had [he] been at the conference, nor would [he] have gained anything by attending." *Gagnon*, 470 U.S. at 527. Because petitioner had no constitutional right to attend the *in camera* conference, counsel was not ineffective for failing to secure his presence.

### b. *Failure to Interview and Call Witnesses, File Motions, and Effectively Defend*

Petitioner next contends that counsel failed to interview and call witnesses, file pre-trial motions, or effectively defend against the charges. However, petitioner does not identify any specific actions counsel should have taken nor indicate how he was prejudiced by counsel's omissions. With respect to the witnesses and counsel's alleged failure to adequately defend against the charges, although petitioner contends that counsel should have interviewed potential witnesses, petitioner has failed to provide the names of any specific witnesses or detail the expected testimony that they would have given. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352

13

(6th Cir. 1993) (same).  Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Because petitioner has identified no specific defense witnesses counsel failed to call, nor identified what evidence these witnesses would have provided or what additional evidence or defense theories would have been uncovered by further investigation, petitioner has failed to meet his burden of demonstrating counsel's ineffectiveness.

Petitioner's claim relating to counsel's failure to file pre-trial motions fails for the same reason.  Apart from the motion for an *in-camera* hearing issue discussed above, petitioner has identified no specific motions which counsel should have, but failed to, file.  Petitioner's blanket assertion that trial counsel failed to file unspecified pretrial motions in insufficient to demonstrate that counsel was ineffective. *See Quinones v. Rubenstein*, No. 5:06-cv-00072, 2009 WL 899428, at *27-*28 (S.D. W. Va. Mar. 26, 2009); *United States v. Adams*, No. 1:05CR126, 2008 WL 918534, at *16 (N.D. Ohio Apr. 2, 2008); *Murillo-Moya v. United States*, No. 8:04-cv-335, 2008 WL 619312, at *4 (M.D. Fla. Mar. 4, 2008); *Lindsey v. Travis*, No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

### c. Failure to Object to Scoring of Offense Variable 12

Finally, petitioner contends that counsel was ineffective for failing to object to the scoring of offense variable 12 (OV12), for which the trial court scored 50 points based on petitioner's penetration of the victim during the sexual assaults.  Again, however, the record belies petitioner's claim.  At sentencing, counsel did object to the scoring of OV12, arguing that petitioner's plea was solely to CSC-II, which involved no penetration, and that there was no proof presented of any penetration.  Further, counsel argued that the court could not itself find penetration under the Supreme Court's *Blakely* decision.  *See* Sentence Tr., at 4-5, 6-7.  The trial court simply overruled counsel's objection to the scoring of OV12.  Petitioner does not suggest what more counsel could or should have done, nor does he suggest any other bases upon which counsel could have objected to the scoring of this offense variable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim.

E.     *Trial Court's Pre-Plea Rulings & Voluntariness of Plea (Claim II)*

In his next claim petitioner contends that the trial court made erroneous pretrial rulings which denied him various constitutional rights.  Specifically, petitioner challenges the trial court's failure to allow petitioner to attend the *in camera* discussion regarding the admissibility of his evidence and the court's granting of the prosecutor's motion in *limine*, which excluded from evidence the victim's Child Protective Services records showing prior false allegations of sexual assault and related corroborating witnesses.  Petitioner also contends that these rulings, as well as the scoring of OV12 at 50 points, rendered his plea involuntary.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Trial Court's Evidentiary Rulings*

15

Petitioner challenges the trial court's evidentiary rulings barring him from presenting at trial evidence that the victim had made prior false allegations of rape.  Even assuming that petitioner was denied his constitutional rights by these rulings, *but see Boggs v. Collins*, 226 F.3d 728, 739-43 (6th Cir. 2000) (exclusion of evidence of victim's prior false allegations of rape did not deny petitioner his right to confront the witnesses),[1] petitioner is not entitled to habeas relief because his guilty plea effects a waiver of these claims.  "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects."  *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005).  As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Thus, in light of his plea petitioner cannot obtain habeas relief on the basis of the trial court's pre-plea evidentiary rulings.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.      *Voluntariness of Plea*

a.  *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17

---

[1]As discussed above, petitioner's exclusion from the *in camera* hearing did not deprive him of his constitutional right to be present at all critical stages of the proceedings.

F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]"  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

### b.  Analysis

As an initial matter, the record of the plea colloquy establishes that petitioner's plea was voluntary.  Petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty, and repeatedly indicated that it was his own decision to plead no contest.  *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Likewise, petitioner does not contend, nor could he, that he did not receive sufficient explanation of various things required to make his plea voluntary.  The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which

17

a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*, 523 U.S. 614, 618 (1998); (2) the direct consequences of the plea, *see Mabry*, 467 U.S. at 509; and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson*, 426 U.S. at 645 n.13.  As discussed in part B of this Report, *supra*, the plea hearing transcript establishes that petitioner was informed of each of these things.  Rather, petitioner contends that his plea was not voluntary because (a) the trial court's evidentiary rulings coerced his plea, and (b) he did not expect that OV12 would be scored at 50 points for penetration, when the two CSC-I charges involving penetration were dismissed as a result of the plea agreement.  The Court should conclude that neither factor renders petitioner's plea involuntary.

With respect to the trial court's evidentiary rulings, petitioner cannot show that these rulings resulted in a plea that was not his free and voluntary choice.  To be sure, the evidentiary rulings foisted a difficult choice on petitioner: either proceed to trial to preserve the evidentiary errors and risk that he could be convicted of a greater charge which was affirmed on appeal, or plead no contest to a lesser charge.  However,

> [i]n confronting the choice of whether to plead [no contest], [petitioner] did not face a decision different from that of any other defendant faced with an adverse pre-trial ruling. The Supreme Court has held that a guilty plea is valid where it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The transcript of the [plea] proceeding in this case reveals that the trial court made a completely satisfactory effort to ensure that [petitioner's] plea was voluntary and not, in any way, the product of coercion.

*United States v. Davis*, 954 F.2d 182, 185 (4th Cir. 1992); *see also*, *Hudgins v. United States*, 340 F.2d 391, 396 (3d Cir. 1965); *Foy v. Renico*, No. 05-CV-70284, 2005 WL 2924391, at *4 (E.D. Mich. Oct. 31, 2005) (Steeh, J.).  The fact that the trial court's evidentiary rulings affected

18

petitioner's balancing of the costs and benefits of pleading no contest does not render his decision anything other than a "voluntary and intelligent choice among the alternative courses of action open to [him]." *Alford*, 400 U.S. at 31.

Nor can petitioner show that his plea was involuntary because the trial court scored OV12 at 50 points for penetration. The trial court explained to petitioner that he faced a maximum sentence of 15 years' imprisonment, and petitioner indicated that no promises had been made to him to induce his plea. Further, there was no agreement regarding petitioner's sentence, nor was there any discussion of the sentencing guidelines in the plea agreement or by the court which would have lead petitioner to reasonably expect any particular sentence. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Generally, "as long as the defendant understands the length of time he might possibly receive, he is fully aware of the pleas's consequences." *James v. Cain*, 56 F.3d 662, 666-67 (5th Cir. 1995). "Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 Fed. Appx. 303, 308 (6th Cir. 2001) (citing *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir.1993); *Stout v. United States*, 508 F.2d 951, 953 (6th Cir.1975)).

Petitioner also contends that his plea was involuntary because, when he entered the plea, he thought that he would be sentenced under the 2004 version of the Michigan sentencing guidelines, rather than the 1997 version under which he was actually sentenced. However, the particular version of the guidelines applicable to petitioner was no part of the plea bargain or any discussion by the court regarding petitioner's plea. There is nothing in the record that even hints that the

19

applicability of the 2004 guidelines, rather than the 1997 guidelines, had any bearing on petitioner's decision to plead guilty. And there was no difference in the maximum penalty to which petitioner was exposed, which was set by the statute and of which petitioner was informed. Thus, petitioner cannot show that the use of the 1997 guidelines rendered his plea involuntary, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Sentencing (Claim II & III)*

Petitioner next challenges the trial court's scoring of OV12. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Guideline Scoring*

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

To the extent petitioner contends that the scoring of OV12 is invalid because he was only

convicted of CSC-II, which involved no penetration, and the CSC-I charges involving penetration were dismissed, the claim is without merit. Regardless of petitioner's admissions at the plea hearing, petitioner was charged with two CSC-I counts alleging penetration, and the victim's statement to the police which formed the factual basis of the plea provided evidence of penetration. The trial court was free to consider this conduct in imposing sentence, regardless of petitioner's admissions at the plea colloquy. As the Supreme Court has explained, traditionally "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994). Thus, the fact that the charges may have been dismissed pursuant to a plea agreement "is not significant considering that the judge could properly consider the criminality of the underlying actions regardless of the final disposition of the cases." *Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995). Accordingly, petitioner is not entitled to habeas relief on this claim.

2.   *Blakely*

Likewise, to the extent petitioner contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his claim is without merit. In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which

21

increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely*

rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge
> may impose *solely on the basis of the facts reflected in the jury verdict or admitted
> by the defendant.* In other words, the relevant "statutory maximum" is not the
> maximum sentence a judge may impose after finding additional facts, but the
> maximum he may impose *without* any additional findings. When a judge inflicts
> punishment that the jury's verdict alone does not allow, the jury has not found all the
> facts "which the law makes essential to the punishment," and the judge exceeds his
> proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically

suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional

under *Apprendi* because they allow federal judges to impose sentences based on facts not found by

a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice

Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are

unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance

between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at

233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits

majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*.

A separate majority joined an opinion authored by Justice Breyer, which contained the Court's

decision on the remedial issue. The remedial majority concluded that the appropriate remedy for

the constitutional violation was not to strike the Guidelines in their entirety, but to excise two

statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the

Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing

sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the

23

statutory maximum authorized by law.  *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286

n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charge, therefore, contained

all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that

charge.  *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose

a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will

always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court

made additional factual findings in imposing the minimum term of petitioner's imprisonment, which

in this case equated with his maximum term, life imprisonment.  The Supreme Court has repeatedly

made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized

by a jury's verdict or a defendant's plea.  As the Supreme Court explained in *Harris v. United States*,

536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum
> authorized by the jury's verdict would have been considered an element of an
> aggravated crime–and thus the domain of the jury–by those who framed the Bill of
> Rights.  The same cannot be said of a fact increasing the mandatory minimum (but
> not extending the sentence beyond the statutory maximum), for the jury's verdict
> authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes
> involving judicial factfinding entail less judicial discretion than indeterminate
> schemes, the constitutionality of the latter implies the constitutionality of the former.
> This argument is flawed on a number of levels.  First, the Sixth Amendment by its
> terms is not a limitation on judicial power, but a reservation of jury power.  It limits

24

judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Newly Discovered Evidence/Actual Innocence (Claim IV)*

Petitioner next contends that he is entitled to an evidentiary hearing to develop newly discovered evidence which would show that he is actually innocent and entitled to withdraw his plea. Because petitioner's plea withdrawal and actual innocence claims do not provide a basis for habeas relief, an evidentiary hearing is not appropriate.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a).  Thus, the existence of new evidence, standing alone, is not a basis for granting the writ.

As the Supreme Court has explained: "Claims of actual innocence based on newly discovered

evidence have never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*,

506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a

constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his

otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added);

*Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the

petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial.");

*Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the

constitutionality of the applicant's detention; the existence merely of newly discovered evidence

relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."),

*overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Thus, the newly

discovered evidence, standing alone, provides no basis for habeas relief.

　　　　Nor does petitioner's assertion of innocence after the plea was entered render involuntary

his otherwise valid plea.  As another court observed long ago, there are "no cases which hold that

denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders

the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331

(E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970).  Although *Hansen* was decided nearly forty

years ago, this observation holds true today.  It is well established that "factual guilt or innocence

. . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex*

*rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir.

1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least."). Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Nor can petitioner show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979). Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea. Under this standard,

27

a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, 264 Fed. Appx. 2 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007). To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence." *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). Here, the only evidence to which petitioner points that would demonstrate his innocence are the Child Protective Service reports which he claims would show that the victim made prior false accusations of sexual assault. This evidence, however, does not directly go to his factual guilt or innocence, but only to impeaching the credibility of the complainant. Such newly discovered impeachment evidence does not provide evidence of actual innocence justifying withdrawal of a plea. *See United States v. Nichols*, 986 F.2d 1199, 1201-02 (8th Cir. 1993); *cf. Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).

Because petitioner's actual innocence and plea withdrawal claims provide no basis for habeas relief, petitioner is entitled neither to an evidentiary hearing or habeas relief on these claims.

H.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny

28

petitioner's application for the writ of habeas corpus.

III.       NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.



                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 11/9/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on November 9, 2009.

s/Eddrey Butts
Case Manager